UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON



FILED
MAY 3 0 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA

v.                              CRIMINAL NO. 2:14-00113
                                18 U.S.C. § 371

JAMES H. EVANS III

I N F O R M A T I O N

The United States Attorney Charges:

COUNT ONE
(Conspiracy)

Background

At all relevant times:

1. Defendant JAMES H. EVANS III owned and operated Baisden Recycling, Inc., a West Virginia corporation operating in Logan, Logan County, West Virginia, that primarily dealt in the scrap salvage business.

2. Stephen B. Herndon, named herein as an unindicted co-conspirator, was an employee of Arch Coal, Inc. ("Arch"), and worked as the warehouse manager for Arch at the Mountain Laurel Mining Complex, an underground mine operated by an Arch

subsidiary, situated in or near Sharples, Logan County, West Virginia.

3. A person known to the United States Attorney ("Known Person Three") was employed as Arch as the general manager of the Mountain Laurel Mining Complex, and, as general manager, had a fiduciary duty to Arch.

4. Defendant JAMES H. EVANS III had an agreement with Arch to salvage scrap metal placed by Arch employees in bins located on the Mountain Laurel property, in exchange for providing Arch with a percentage of the sale of the scrap metal. The scrap metal contract did not include certain scrap cable located at Mountain Laurel that was not placed in the bins.

5. Once a scrap metal bin became full, Defendant JAMES H. EVANS III had the scrap metal bin transported to a business known to the United States Attorney ("Nitro Scrap Dealer"). The Nitro Scrap Dealer then would mail Arch a check for a percentage of the sale of the scrap metal in the bins and mailed the remaining funds to Mr. Evans.

## The Conspiracy

6. From sometime in 2009 through and until at least late 2010, in or near Sharples and Logan, Logan County, West Virginia, within the Southern District and elsewhere, defendant

JAMES H. EVANS III, Stephen B. Herndon and Known Person Three, and others known and unknown to the United States Attorney, did knowingly conspire to commit offenses against the United States, that is, among others, to devise and intend to devise a scheme and artifice to defraud Arch of the intangible right of honest services of Known Person Three and to obtain money and property by false pretenses through mail fraud, in violations of 18 U.S.S. §§ 1341 and 1346, that is, by depriving Arch of the intangible right of honest services of Known Person Three and to obtain money and property by false pretenses through the payment of illegal cash kickbacks and concealment of material information.

## Objects of the Conspiracy

7. It was an object of the conspiracy for defendant JAMES H. EVANS III to share a portion of the profits received selling scrap cable obtained from the Mountain Laurel Mining Complex with Known Person Three (the "Scrap Cable Kickback Scheme"). It was further an object of the conspiracy for Known Person Three to use his official position to enrich himself by soliciting and accepting payments from defendant JAMES EVANS III in exchange for favorable official action, and for defendant JAMES EVANS III

to enrich himself by secretly obtaining favorable official action for himself and his company through corrupt means.

### Manner and Means of the Conspiracy

8. In furtherance of the scheme, defendant JAMES H. EVANS III would and did use the manner and means as set forth below.

   a. Stephen B. Herndon, on behalf of Known Person Three, approached defendant JAMES H. EVANS III about recycling a significant amount of scrap cable situated at the Mountain Laurel Mining Complex.

   b. Stephen B. Herndon offered defendant JAMES H. EVANS III the opportunity to recycle the scrap cable if defendant JAMES H. EVANS III would agree to pay a significant cash kickback to Known Person Three.

   c. JAMES H. EVANS III agreed to pay an illegal cash kickback to Known Person Three.

   d. JAMES H. EVANS III would and did remove the scrap cable and sell for scrap value at the Nitro Scrap Dealer.

   e. The Nitro Scrap Dealer paid defendant JAMES H. EVANS III by check delivered through the mail.

   f. Defendant JAMES H. EVANS III gave Stephen B. Herndon approximately $30,000 in cash to be delivered to Known Person Three, in exchange for favorable official action by Known Person

Three, which was the continued selection of EVANS' company as a vendor for the scrap metal bins at Mountain Laurel by Known Person Three.

g. Defendant JAMES H. EVANS III took steps to hide, conceal and cover up his activity and the nature and scope of his dealings with Known Person Three by not following the usual course of dealings with Arch and the Nitro Scrap Dealer, and by taking scrap cable and instructing the Nitro Scrap Dealer to not mail Arch a check.

### Overt Acts In Furtherance Of The Conspiracy

9. On or about the following dates, defendant JAMES H. EVANS III and his co-conspirators committed the following overt acts in furtherance of the conspiracy:

a. On or about October 19, 2010, defendant JAMES H. EVANS III sold a load of scrap material to the Nitro Scrap Dealer, which included the scrap cable obtained from the Mountain Laurel Mining Complex, for approximately $79,501.

b. On or about October 19, 2010, the Nitro Scrap Dealer paid defendant JAMES H. EVANS III by mail the approximate $79,501.41, which constituted the amount owed on the load less fees, and which included the scrap cable from the Mountain Laurel Mining Complex.

In violation of Title 18, United States Code, Sections 371.

                UNITED STATES OF AMERICA

                R. BOOTH GOODWIN II
                United States Attorney

By: _____
     MEREDITH GEORGE THOMAS
     Assistant United States Attorney

By: _____
     THOMAS C. RYAN
     Assistant United States Attorney