

**United States Department of Justice**

*United States Attorney*
*Southern District of West Virginia*

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

**FILED**
AUG - 6 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

May 21, 2014

Robert B. Kuenzel II
Kuenzel & Associates PLLC
36 Adams Street
Chapmanville, West Virginia 25508

      Re: United States v. James H. Evans III

Dear Mr. Kuenzel:

This will confirm our conversations with regard to your client, James H. Evans III. As a result of these conversations, it is agreed by and between the United States and Mr. Evans as follows:

    1.    **CHARGING AGREEMENT.** Mr. Evans agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

    2.    **RESOLUTION OF CHARGES.** Mr. Evans will plead guilty to a violation of 18 U.S.C. § 371 (Conspiracy) as charged in said information.

    3.    **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Mr. Evans will be exposed by virtue of this guilty plea is as follows:

    (a)    Imprisonment for a period of five years;

    (b)    A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

*JE*
Defendant's
Initials

  (c) A term of supervised release of three years;

  (d) A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

  (e) An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

  4. **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Mr. Evans will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Mr. Evans will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Mr. Evans fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Evans.

  5. **RESTITUTION.** Notwithstanding the offense of conviction, Mr. Evans agrees that he owes restitution in the amount of $30,000 to Arch Coal, Inc. and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible. In aid of restitution, Mr. Evans further agrees as follows:

  (a) Mr. Evans agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

  (b) Mr. Evans will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing of this plea agreement.

_JE_____
Defendant's
Initials

(c) Mr. Evans agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

(d) Mr. Evans agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e) Mr. Evans agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Mr. Evans to pay a greater or lesser sum of restitution in accordance with law.

6. **PAYMENT OF MONETARY PENALTIES.** Mr. Evans agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Evans further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

7. **COOPERATION.** Mr. Evans will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Evans may have counsel present except when appearing before a grand jury.

_JE_
Defendant's Initials

Further, Mr. Evans agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Evans, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by Mr. Evans pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Evans, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Evans for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Evans for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Evans stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Evans agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Mr. Evans, and Mr. Evans is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Evans or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Evans or on his behalf. Mr. Evans knowingly and voluntarily waives, see <u>United States v. Mezzanatto</u>, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a

_JE_
Defendant's
Initials

breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Evans understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Evans agree that the following provisions of the United States Sentencing Guidelines apply to this case.

USSG § 2B1.1 (via USSG § 2X1.1(a))

| | |
|---|---|
| Base Offense Level | 6 |
| Loss between $10,000 and $30,000 | +4 |
| Adjusted Offense Level | 10 |

The United States and Mr. Evans acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

13. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Evans knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever,

_____
Defendant's Initials

including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Evans also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

14. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Evans knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

15. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a) Inform the Probation Office and the Court of all relevant facts and conduct;

(b) Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c) Respond to questions raised by the Court;

(d) Correct inaccuracies or inadequacies in the presentence report;

(e) Respond to statements made to the Court by or on behalf of Mr. Evans;

_____
Defendant's Initials

(f) Advise the Court concerning the nature and extent of Mr. Evans' cooperation; and

(g) Address the Court regarding the issue of Mr. Evans' acceptance of responsibility.

16. **VOIDING OF AGREEMENT.** If either the United States or Mr. Evans violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

17. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Mr. Evans in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Mr. Evans in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

R. BOOTH GOODWIN II
United States Attorney

By: *[signature]*
MEREDITH GEORGE THOMAS
Assistant United States Attorney

By: *[signature]*
THOMAS C. RYAN
Assistant United States Attorney

TCR/smw

*[initials: JE]*
Defendant's Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eight-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____          _____
James H. Evans III                 Date Signed
Defendant

_____          _____
Robert B. Kuenzel II               Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.     CRIMINAL NO. _____
                                    18 U.S.C. § 371

**JAMES H. EVANS III**

# I N F O R M A T I O N

The United States Attorney Charges:

**COUNT ONE**
**(Conspiracy)**

**Background**

At all relevant times:

    1.  Defendant JAMES H. EVANS III owned and operated Baisden Recycling, Inc., a West Virginia corporation operating in Logan, Logan County, West Virginia, that primarily dealt in the scrap salvage business.

    2.  Stephen B. Herndon, named herein as an unindicted co-conspirator, was an employee of Arch Coal, Inc. ("Arch"), and worked as the warehouse manager for Arch at the Mountain Laurel Mining Complex, an underground mine operated by an Arch

PLEA AGREEMENT EXHIBIT "A"

subsidiary, situated in or near Sharples, Logan County, West Virginia.

3. A person known to the United States Attorney ("Known Person Three") was employed as Arch as the general manager of the Mountain Laurel Mining Complex, and, as general manager, had a fiduciary duty to Arch.

4. Defendant JAMES H. EVANS III had an agreement with Arch to salvage scrap metal placed by Arch employees in bins located on the Mountain Laurel property, in exchange for providing Arch with a percentage of the sale of the scrap metal. The scrap metal contract did not include certain scrap cable located at Mountain Laurel that was not placed in the bins.

5. Once a scrap metal bin became full, Defendant JAMES H. EVANS III had the scrap metal bin transported to a business known to the United States Attorney ("Nitro Scrap Dealer"). The Nitro Scrap Dealer then would mail Arch a check for a percentage of the sale of the scrap metal in the bins and mailed the remaining funds to Mr. Evans.

## The Conspiracy

6. From sometime in 2009 through and until at least late 2010, in or near Sharples and Logan, Logan County, West Virginia, within the Southern District and elsewhere, defendant JAMES H. EVANS III, Stephen B. Herndon and Known Person Three,

PLEA AGREEMENT EXHIBIT "A"

and others known and unknown to the United States Attorney, did knowingly conspire to commit offenses against the United States, that is, among others, to devise and intend to devise a scheme and artifice to defraud Arch of the intangible right of honest services of Known Person Three and to obtain money and property by false pretenses through mail fraud, in violations of 18 U.S.S. §§ 1341 and 1346, that is, by depriving Arch of the intangible right of honest services of Known Person Three and to obtain money and property by false pretenses through the payment of illegal cash kickbacks and concealment of material information.

### Objects of the Conspiracy

7. It was an object of the conspiracy for defendant JAMES H. EVANS III to share a portion of the profits received selling scrap cable obtained from the Mountain Laurel Mining Complex with Known Person Three (the "Scrap Cable Kickback Scheme"). It was further an object of the conspiracy for Known Person Three to use his official position to enrich himself by soliciting and accepting payments from defendant JAMES EVANS III in exchange for favorable official action, and for defendant JAMES EVANS III to enrich himself by secretly obtaining favorable official action for himself and his company through corrupt means.

### Manner and Means of the Conspiracy

PLEA AGREEMENT EXHIBIT "A"

8. In furtherance of the scheme, defendant JAMES H. EVANS III would and did use the manner and means as set forth below.

a. Stephen B. Herndon, on behalf of Known Person Three, approached defendant JAMES H. EVANS III about recycling a significant amount of scrap cable situated at the Mountain Laurel Mining Complex.

b. Stephen B. Herndon offered defendant JAMES H. EVANS III the opportunity to recycle the scrap cable if defendant JAMES H. EVANS III would agree to pay a significant cash kickback to Known Person Three.

c. JAMES H. EVANS III agreed to pay an illegal cash kickback to Known Person Three.

d. JAMES H. EVANS III would and did remove the scrap cable and sell for scrap value at the Nitro Scrap Dealer.

e. The Nitro Scrap Dealer paid defendant JAMES H. EVANS III by check delivered through the mail.

f. Defendant JAMES H. EVANS III gave Stephen B. Herndon approximately $30,000 in cash to be delivered to Known Person Three, in exchange for favorable official action by Known Person Three, which was the continued selection of EVANS' company as a vendor for the scrap metal bins at Mountain Laurel by Known Person Three.

PLEA AGREEMENT EXHIBIT "A"

g. Defendant JAMES H. EVANS III took steps to hide, conceal and cover up his activity and the nature and scope of his dealings with Known Person Three by not following the usual course of dealings with Arch and the Nitro Scrap Dealer, and by taking scrap cable and instructing the Nitro Scrap Dealer to not mail Arch a check.

**Overt Acts In Furtherance Of The Conspiracy**

9. On or about the following dates, defendant JAMES H. EVANS III and his co-conspirators committed the following overt acts in furtherance of the conspiracy:

a. On or about October 19, 2010, defendant JAMES H. EVANS III sold a load of scrap material to the Nitro Scrap Dealer, which included the scrap cable obtained from the Mountain Laurel Mining Complex, for approximately $79,501.

b. On or about October 19, 2010, the Nitro Scrap Dealer paid defendant JAMES H. EVANS III by mail the approximate $79,501.41, which constituted the amount owed on the load less fees, and which included the scrap cable from the Mountain Laurel Mining Complex.

In violation of Title 18, United States Code, Sections 371.

PLEA AGREEMENT EXHIBIT "A"

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney


By: _____
    MEREDITH GEORGE THOMAS
    Assistant United States Attorney



By: _____
    THOMAS C. RYAN
    Assistant United States Attorney

PLEA AGREEMENT EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.  CRIMINAL NO. _____

JAMES H. EVANS III

## STIPULATION OF FACTS

The United States and James H. Evans III stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for that offense, include the following:

Since at least 2009, Mr. Evans has owned and operated Baisden Recycling, Inc. in or near Logan, Logan County, West Virginia. Mr. Evans buys and sells a variety of scrap material. On occasion, Mr. Evans would resell scrap materials to another scrap dealer operating in or near Nitro, Kanawha County, West Virginia (the "Nitro Scrap Dealer").

Arch Coal, Inc. ("Arch"), through a wholly-owned subsidiary, owned and operated the Mountain Laurel Mining Complex in or near Sharples, Logan County. Stephen B. Herndon worked as a warehouse manager. A person known to the United States Attorney ("Known Person Three") worked as the general manager of the Mountain Laurel Mining Complex and had a fiduciary duty to Arch.

Since at least 2009, Arch allowed Mr. Evans to place "roll-off bins" on the Mountain Laurel Mining Complex. Arch employees would place scrap metal in the roll-off bins as the material became obsolete. Once a roll-off bin became full, Mr. Evans would have it transported to the Nitro Scrap Dealer to be sold.

JE
Defendant's Initials

PLEA AGREEMENT EXHIBIT "B"

The Nitro Scrap Dealer then mailed Arch a check for a percentage of the sale and mailed the remaining funds to Mr. Evans.

Sometime in 2009, Mr. Evans was approached by Mr. Herndon, on behalf of Known Person Three, and asked if he was interested in scrapping a significant amount of cable that had accumulated on the Mountain Laurel property. The scrap cable was more valuable than other scrap metal because it was made of #2 copper.

In order to obtain the work, Mr. Evans had to agree to pay Known Person Three a kickback and nothing to Arch, although as a matter of course Mr. Evans paid Arch in the dealings related to the roll-off bins. Mr. Evans agreed (the "Scrap Cable Kickback Scheme").

Over the course of several loads, Mr. Evans hauled the scrap cable to the Nitro Scrap Dealer, usually intermingled with other scrap materials. The Scrap Dealer paid Mr. Evans, who in turn gave Mr. Herndon a portion of the sale in cash as a kickback for Known Person Three.

As an example, around October 19, 2010, the Nitro Scrap Dealer picked up a load of scrap material for Mr. Evans from the Mountain Laurel Mining Complex, which included the scrap cable. Mr. Evans was to be paid approximately $79,501 for the entire load.

Mr. Evans did not operate under his usual agreement with the Nitro Scrap Dealer, as the Nitro Scrap Dealer did not mail Arch the usual percentage of the scrap metal value.

Around October 19, 2010, the Nitro Scrap Dealer mailed Mr. Evans a check in the amount of $79,501.41, which constituted the amount owed on the load less fees.

Mr. Evans paid a kickback to Mr. Herndon to pay to Known Person Three in exchange for being allowed to scrap the cable.

On January 30, 2014, Mr. Evans was interviewed by law enforcement regarding allegations of kickbacks at the Mountain Laurel Mining Complex. Mr. Evans admitted to his involvement in the Scrap Cable Kickback Scheme. At the time Mr. Evans

_JE_
Defendant's Initials

**PLEA AGREEMENT EXHIBIT "B"**

indicated a willingness to cooperate, the United States had information that Mr. Evans paid kickbacks of approximately $30,000.

This Stipulation of Facts does not contain each and every fact known to Mr. Evans and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____          5-27-14
JAMES H. EVANS III                      Date
Defendant


_____          05/27/2014
ROBERT B. KUENZEL II                    Date
Counsel for Defendant


_____          5-30-14
MEREDITH GEORGE THOMAS                  Date
Assistant United States Attorney


_____          5-30-14
THOMAS C. RYAN                          Date
Assistant United States Attorney


                                        JE
                                        _____
                                        Defendant's
                                        Initials

**PLEA AGREEMENT EXHIBIT "B"**