IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRANSCRIPT OF PROCEEDINGS

```
----------------------------x
                            :
UNITED STATES OF AMERICA,    :        CRIMINAL ACTION
                            :        NO. 2:14-CR-00113-01
vs.                         :
                            :
JAMES H. EVANS, III,         :        August 5, 2014
                            :
        Defendant.          :
                            :
----------------------------x
```

PLEA HEARING

BEFORE THE HONORABLE THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:          MS. MEREDITH GEORGE THOMAS
                                Assistant U.S. Attorney
                                300 Virginia Street, East
                                Charleston, WV  25301

For the Defendant:              MR. ROBERT B. KUENZEL
                                Kuenzel & Associates
                                P.O. Box 607
                                Chapmanville, WV  25508

Court Reporter:                 Lisa A. Cook, RPR-RMR-CRR-FCRR

Proceedings recorded by mechanical stenography; transcript
produced by computer.

P R O C E E D I N G S

1

2      THE CLERK:  The matter before the Court is the

3  *United States* vs. *James Evans*, Criminal Action Number

4  2:14-CR-00113, scheduled for a plea hearing.

5      THE COURT:  Good afternoon.  Will counsel please

6  note their appearances.

7      MS. THOMAS:  Meredith Thomas on behalf of the

8  United States.

9      MR. KUENZEL:  Rob Kuenzel on behalf of the

10  defendant, James Evans, who is also present, Your Honor.

11      THE COURT:  Good afternoon.

12  Mr. Evans, would you please stand and I'll ask the

13  deputy clerk to administer an oath to you at this time.

14  (Defendant sworn)

15      THE COURT:  You may be seated.

16      MR. KUENZEL:  Judge, let me first apologize for

17  being tardy.  There was a crash out here on the bridge

18  coming across the river.  So, that's why we were late.

19      THE COURT:  I understand that.  I appreciate that.

20  It happens from time to time.

21  Mr. Evans, do you understand that you're now under oath

22  and you must tell the truth and if you testify falsely, you

23  may face prosecution for perjury or for making a false

24  statement?

25      THE DEFENDANT:  Yes, sir.

1        THE COURT:  All right.  Throughout the course of

2  this hearing, I'm going to be asking you a number of

3  questions and I want to make sure that you and I are

4  communicating clearly.  So, if at any time you don't

5  understand a question that I ask or anything else that

6  occurs in this hearing, I want you to feel free to speak up

7  and seek clarification.

8    Also, if at any time you need to confer with your

9  attorney, I'll be pleased to pause the proceedings to allow

10  you to do so.

11    Do you understand all that?

12        THE DEFENDANT:  I do, sir.

13        THE COURT:  All right.  Let me begin by asking you

14  how old are you?

15        THE DEFENDANT:  Thirty-nine.

16        THE COURT:  Can you briefly describe your

17  educational background?

18        THE DEFENDANT:  High school educated.

19        THE COURT:  And can you read and write and

20  understand the English language?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Any hesitation about that?

23        THE DEFENDANT:  No, sir.

24        THE COURT:  All right.  Can you briefly describe

25  your work experience?

1       THE DEFENDANT:  My -- I work for myself.  I own a

2  salvage yard that I once worked for and now own.

3       THE COURT:  All right.  Have you taken any

4  medicine or drugs or consumed any alcoholic beverages in the

5  last 24 hours?

6       THE DEFENDANT:  Yes, sir.  I take medicine.  I was

7  actually at the hospital last night.

8       THE COURT:  Prescription medication?

9       THE DEFENDANT:  Yes, sir.

10       THE COURT:  And what is that?

11       THE DEFENDANT:  I know I've taken some Xanax this

12  morning.  And I don't know what they gave me last night.

13       THE COURT:  What, what did they give you medicine

14  for last night?

15       THE DEFENDANT:  Shortness of breath, a bad

16  headache, just high blood pressure, that kind of stuff.

17       THE COURT:  Okay.  And you took Xanax this

18  morning?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  All right.  Any other prescription

21  medications?

22       THE DEFENDANT:  No, sir.

23       THE COURT:  To the best of your knowledge, as you

24  sit here today are you suffering from any side effects from

25  any of the medications you've taken that would in any way

1  affect your ability to fully participate in this hearing

2  today?

3        THE DEFENDANT:  No, sir.

4        THE COURT:  Now, have you ever been treated for

5  any mental illness or addiction to drugs of any kind?

6        THE DEFENDANT:  No, sir.

7        THE COURT:  Do you know where you are and why

8  you're here today?

9        THE DEFENDANT:  Yes, sir.

10        THE COURT:  Do you have any hearing impairment or

11  other disability which would prevent you from fully

12  participating in this hearing today?

13        THE DEFENDANT:  No, sir.

14        THE COURT:  Mr. Kuenzel, do you have any reason to

15  question the competence of your client?

16        MR. KUENZEL:  No, Your Honor.

17        THE COURT:  All right.  I believe I've been

18  provided with the original of the plea agreement.

19     Ms. Thomas, is this -- have there been any changes made

20  to the plea agreement since the copy I received earlier?

21        MS. THOMAS:  No, Your Honor.

22        THE COURT:  All right.  Very well.

23     Mr. Evans, is that your signature which appears on the

24  8th and final page of the plea agreement?

25        THE DEFENDANT:  Yes, sir.

```
1              THE COURT:  And are those your initials that
2    appear on the other pages of the plea agreement?
3              THE DEFENDANT:  Yes, sir.
4              THE COURT:  And have you read and reviewed each of
5    the 16 paragraphs of the plea agreement and the two exhibits
6    attached thereto?
7        Let me ask that question again.  Have you read and
8    reviewed with your attorney each of the 16 paragraphs of the
9    plea agreement and the exhibit attached to -- the exhibits
10   attached to the plea agreement?
11             THE DEFENDANT:  Yes, Your Honor.
12             THE COURT:  All right.  Just for the record, I
13   would note that there's 17 numbered and one of them -- well,
14   we skipped number 12, so there's actually only 16 paragraphs
15   in the, in the plea agreement.
16       And do you wish to have the various terms of the plea
17   agreement orally stated on the record or do you believe that
18   that's unnecessary?
19             MR. KUENZEL:  Judge, we respectfully would waive
20   the reading of the plea agreement.
21             THE COURT:  All right.  But let me ask the
22   defendant.
23             MR. KUENZEL:  Yes, Your Honor.
24             THE COURT:  I'll ask you again.  Mr. Evans, do you
25   wish to have the various terms of the plea agreement orally
```

1    stated on the record or do you believe that that's

2    unnecessary?

3              THE DEFENDANT:  I think that's unnecessary, Your

4    Honor.

5              THE COURT:  All right.  And do you understand and

6    agree with all of the terms and provisions contained in the

7    plea agreement?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  All right.

10         Mr. Kuenzel, have you reviewed each of the 16

11   paragraphs of the plea agreement and its exhibits with your

12   client?

13             MR. KUENZEL:  I have, Your Honor.

14             THE COURT:  And, Mr. Kuenzel and Ms. Thomas, is

15   there any reason why either of you believe that the various

16   terms of the plea agreement should be orally stated on the

17   record?

18             MS. THOMAS:  No, Your Honor.

19             MR. KUENZEL:  No, Your Honor.

20             THE COURT:  All right.  Nonetheless, Mr. Evans, I

21   want to talk with you about some of the provisions of the

22   plea agreement beginning with Section 5 which begins on Page

23   2 and runs over on to Page 3 and is entitled "Restitution."

24         And it recites that you agree that you owe restitution

25   to Arch Coal in the amount of $30,000 with interest.  Do you

1  understand that?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  And more to the point, I want to

4  direct your attention to Subsection (e) of Section 5 and

5  that is an appeal waiver.  And, first of all, do you

6  understand that a waiver is a legal term that means you're

7  giving something up?

8          THE DEFENDANT:  Could you -- I didn't quite

9  understand that, sir.

10          THE COURT:  Do you understand that a waiver is a

11  legal term that means you're giving something up?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that?

14          THE DEFENDANT:  Yes, yes, Your Honor.

15          THE COURT:  All right.  So, in Section 5(e) do you

16  understand that you're waiving -- you waive your right to

17  appeal any order of restitution imposed by the Court unless

18  the amount of restitution imposed is more than what is

19  recited in Section 5.  Do you understand that waiver?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  All right.  Next I want to refer you

22  to Section 10 of the plea agreement which begins on Page 4

23  and runs over on to Page 5 and is entitled "Stipulation of

24  Facts and Waiver of Federal Rule of Evidence 410."

25      Now, this section relates to a couple of different

matters, the first of which is the Stipulation of Facts which is attached to the plea agreement as Exhibit B. And I want to turn your attention to that document now.

Exhibit B is a three-page document. And on the third page, is that your signature which appears there?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And have you read the Stipulation of Facts?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you agree that all of the facts contained within the stipulation are true?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Any hesitation about that?

THE DEFENDANT: No, sir.

THE COURT: All right. A little bit about what will be happening from here on out. I'll be asking the probation officer to prepare a Pre-Sentence Investigation Report. That report will contain detailed, recommended factual findings regarding this offense and your background, among other things.

Ultimately at sentencing I will make factual findings based, at least in part, on the recommendations contained in the Pre-Sentence Report. And you and the Government have reached an agreement regarding certain facts contained in the stipulation, but I want you to understand that in this

1   process, neither the probation officer nor this Court are

2   bound by that Stipulation of Facts.

3       Do you understand that?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And do you further understand that if

6   I make findings of fact at sentencing that are different

7   from or inconsistent with the facts contained in the

8   stipulation, you will still be bound by your guilty plea and

9   would have no right to withdraw it?  Do you understand that?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  The other matter

12  addressed, then, in Section 10 of the plea agreement is a

13  waiver of Federal Rule of Evidence 410.

14      Now, Rule 410 generally provides that information or

15  documents regarding plea negotiations, and this Stipulation

16  of Facts would fall into that category, those things are

17  generally not admissible at trial.  In other words, the

18  Government can't use that sort of thing against you at

19  trial.

20      However, under this waiver, if you withdraw from the

21  plea agreement or if it's no longer any good because you

22  violated one or more of its terms and there is a subsequent

23  trial, then the Government under the waiver would be allowed

24  to present the Stipulation of Facts in its case in chief or

25  for other purposes at that trial.

1          Do you understand that waiver?

2               THE DEFENDANT:  Yes, sir, yes, Your Honor.

3               THE COURT:  All right.  Next I want to refer you

4     to Section 11 of the plea agreement which appears on Page 5

5     and is entitled "Agreement on Sentencing Guidelines."

6          Now, before we get into this, I want to ask you, has

7     your attorney talked with you regarding the Federal

8     Sentencing Guidelines and how they generally work?

9               THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  And has he shown you that chart in the

11     back of the book?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  All right.  Well, working from that

14     chart, I want to have a similar discussion with you.

15          If you'll recall, on the left side of the chart there's

16     a series of numbers that run from low to high as you go down

17     the page, and those are offense levels.  And the offense

18     level is calculated by starting at the Base Offense Level,

19     or a starting point.  And then that can be adjusted upward

20     or downward depending on the facts and circumstances of the

21     case to arrive at an adjusted offense level.  Then

22     consideration is usually given to a reduction for acceptance

23     of responsibility.

24          Has your attorney talked with you about that?

25               THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And then at that point, you generally

2    arrive at a Total Offense Level.  Then you go up to the top

3    of the chart and there are six criminal history categories.

4    And you would fall into one of those depending on the number

5    of points, if any, assigned to any prior convictions that

6    you may have.

7        Then you combine the Criminal History Category with the

8    Total Offense Level and arrive at a point in the chart that

9    gives a range of months of imprisonment.  Some parts of the

10   chart allow for certain alternatives to imprisonment.

11       Do you understand all these things so far about the

12   guidelines?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  All right.  Once we arrive at a range

15   of months of imprisonment, I have the authority to sentence

16   you within that range, or I have the authority to sentence

17   you outside of that range, either above it or below it under

18   certain circumstances.

19       If I do that based on factors identified in the

20   guidelines themselves, that's generally known as a

21   departure.  If I sentence you outside the guideline range,

22   again above it or below it, based on factors outside of the

23   guidelines, it's generally known as a variance.

24       Has your attorney explained all these things to you?

25              THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And do you believe that you fully

2    understand all these things that I've told you about the

3    guidelines?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  All right.  With that in mind, Section

6    11 contains an agreement you've reached with the Government

7    regarding the guidelines, one or more provisions of the

8    guidelines.

9    Now, this is similar to the Stipulation of Facts in

10   that the Pre-Sentence Report will also include a proposed

11   guideline calculation.  And I will make a sentence -- I will

12   make sentencing guideline findings at sentencing based, at

13   least in part, on the recommendations made by the probation

14   officer.

15   So, again, some of the Stipulation of Facts, even

16   though you've reached an agreement with the Government

17   regarding one or more provisions of the guidelines, I want

18   you to understand that in this process neither the probation

19   officer nor this Court are bound by that agreement on the

20   guidelines.  Do you understand that?

21   THE DEFENDANT:  Yes, Your Honor.

22   THE COURT:  And do you further understand that if

23   I make guideline findings at sentencing that are different

24   from or inconsistent with this agreement on the guidelines,

25   you will still be bound by your guilty plea and would have

1    no right to withdraw it?  Do you understand that?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  All right.  Next I want to refer you

4    to Section 13 of the plea agreement which begins on Page 5

5    and runs over on to Page 6.  And it's entitled "Waiver of

6    Appeal and Collateral Attack."

7      Now, this section relates to a couple of different

8    procedures that I want to discuss with you briefly.

9      An appeal is a procedure by which a party to, to a case

10   before a District Court like this one - and in a criminal

11   case, it's often the defendant - goes to the Court of

12   Appeals, or the next level up of the court system, and

13   argues that certain errors or mistakes may have taken place

14   in their criminal case before the District Court.

15     A collateral attack, which is sometimes referred to as

16   a *habeas corpus* petition, is a separate civil case that a

17   defendant may file after their criminal case is over in

18   which they may also argue that certain errors or mistakes

19   may have taken place in their criminal case before the

20   District Court.

21     Now, do you understand those two procedures at least as

22   I've briefly described them to you?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  All right.  The other matter I want to

25   talk with you about before we get into Section 12 is that

there are two phases to a criminal case.  I want to explain those to you.

     The first one is the phase in which guilt or innocence is determined.  Sometimes that's by trial.  Much more often it's by a guilty plea like what we're doing today.  That phase of the case begins at the very beginning of the case and includes all proceedings up and until that determination is made, such as what we're doing today.

     The next phase of the case is the penalty phase in which the penalty for the crime is determined, including a sentencing hearing at the conclusion of the case.

     Now, do you understand the two phases of a criminal case as I've described them to you?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  All right.  With all that in mind, then, the first paragraph of Section 13 contains an appeal waiver.  I want to go over that with you now.  Give me just a moment.

     (Pause)

          THE COURT:  All right.  In that paragraph -- in that first paragraph do you understand you waive your right to appeal your conviction and any sentence of imprisonment, fine, or term of supervised release or the manner in which the sentence was determined on any ground whatsoever with one exception?  You may appeal any sentence that is greater

1    than the maximum penalty set forth by statute.  Do you

2    understand that waiver?

3               THE DEFENDANT:  Yes, Your Honor.

4               THE COURT:  Anything about it you don't understand

5    or you have questions about?

6               THE DEFENDANT:  No, Your Honor.

7               THE COURT:  All right.  In the second paragraph of

8    Section 13, then, do you also understand that you may not

9    file a later civil proceeding, sometimes referred to as a

10   collateral attack or a *habeas corpus* petition, challenging

11   your plea, conviction, or sentence?  Do you understand that?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  All right.  Any questions about that?

14              THE DEFENDANT:  No, Your Honor.

15              THE COURT:  All right.  Finally, do you understand

16   that you are in no event waiving your right to claim

17   ineffective assistance of counsel either on appeal or by

18   collateral attack?

19              THE DEFENDANT:  I didn't quite understand that,

20   Your Honor.

21              THE COURT:  In spite of these waivers, you are not

22   waiving your right to claim that your counsel was

23   ineffective on appeal or in a collateral attack.  Do you

24   understand that?

25              THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  All right.  Finally, I want to refer

2  you to Section 14 of the plea agreement which is on Page 6

3  and it's entitled "Waiver of FOIA and Privacy Right."

4    Now, this waiver means you can't go back after this

5  case is over and seek documents or other information about

6  the case from the Government even with a Freedom of

7  Information Act request.  Do you understand that waiver?

8    THE DEFENDANT:  Yes, Your Honor.

9    THE COURT:  Mr. Kuenzel, have you thoroughly

10  reviewed the plea agreement with your client?

11    MR. KUENZEL:  I have, Your Honor.

12    THE COURT:  Do you believe that he fully

13  understands the various terms and provisions of the plea

14  agreement, including the waivers and other matters that I've

15  gone over with him this afternoon?

16    MR. KUENZEL:  I do, Your Honor.

17    THE COURT:  And, Mr. Evans, have you reviewed the

18  plea agreement in detail with your attorney?

19    THE DEFENDANT:  Yes, Your Honor.

20    THE COURT:  Do you believe that you've had

21  adequate time to discuss your case fully with your attorney?

22    THE DEFENDANT:  Yes, Your Honor.

23    THE COURT:  Has your attorney answered any

24  questions that you've had about your case?

25    THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  And, Mr. Kuenzel, during your

2   representation of the defendant, has he been cooperative?

3        MR. KUENZEL:  He has, Your Honor.

4        THE COURT:  Mr. Evans, has anything further been

5   agreed to either orally or in writing that is not contained

6   in the plea agreement?

7        THE DEFENDANT:  No, Your Honor.

8        THE COURT:  All right.  I'll order that the plea

9   agreement be filed.  I'll find that the defendant

10  understands and agrees with the terms contained in the plea

11  agreement.  I will defer accepting or rejecting the plea

12  agreement until sentencing after the Pre-Sentence Report has

13  been received and considered.

14     Now, Mr. Evans, have you received and read and reviewed

15  with your attorney a copy of the information, or charging

16  document, in this case?

17        THE DEFENDANT:  Yes, Your Honor.

18        THE COURT:  And do you understand the charge

19  contained in the information?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Would you like me to read the

22  information to you or will you waive the reading of the

23  information?

24        THE DEFENDANT:  I'll waive the reading of the

25  information, sir.

1          THE COURT:  All right.  As I understand it, you'll

2     be pleading guilty to a single-count information which

3     charges you with conspiracy to defraud Arch Coal of its

4     right to the honest services of its employee in violation of

5     18, U.S.C., Section 371.  And I want to go over that statute

6     and that charge with you in just a little bit more detail.

7          Section 371 provides in pertinent part that if two or

8     more persons conspire either to commit any offense against

9     the United States, or any agency thereof, and one or more of

10    such persons do any act to effect the object of the

11    conspiracy, each shall be guilty of a crime against the

12    United States.

13         Now, you're charged with conspiring to violate 18,

14    U.S.C., Section 1341, which is the mail fraud statute, and

15    Section 1346.

16         And Section 1341 provides in pertinent part that

17    whoever, having devised or intending to devise any scheme or

18    artifice to defraud, or for obtaining money or property by

19    means of false or fraudulent pretenses, representations, or

20    promises, for the purpose of executing such scheme or

21    artifice or attempting so to do, places in any post office

22    or authorized depository for mail matter, any matter or

23    thing whatever to be sent or delivered by the Postal

24    Service, or deposits or causes to be deposited any matter or

25    thing whatever to be sent or delivered by any private or

commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at a place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be guilty of a crime against the United States.

Now, Section 1346 provides in pertinent part that the phrase "any scheme or artifice to defraud" includes any scheme or artifice to deprive another of the intangible right of honest services.

Now, in order to prove this charge, the Government would have to prove each of the following elements beyond a reasonable doubt:

And they are, first, that there was a conspiracy to defraud Arch Coal of its right to the honest services of its employee; and, second, the conspiracy was entered into by two or more persons; and, third, at some time during the conspiracy, a member of the conspiracy knowingly performed one of the overt acts charged in the information in order to advance the purpose of the conspiracy; and, finally, at some time during the conspiracy, you knew the purpose of the conspiracy and then deliberately joined the conspiracy.

Now, I want to share with you some definitions that apply to what I've just told you.

1      A criminal conspiracy is an agreement or a mutual

2  understanding knowingly made or knowingly entered into by at

3  least two people to violate the law by some joint or common

4  plan or course of action.

5      An overt act means some type of outward, objective

6  action performed by one of the parties to or one of the

7  members of the agreement or conspiracy which evidences that

8  agreement.

9      The phrase "any scheme or artifice to defraud" means

10 any deliberate plan of action or course of conduct by which

11 someone intends to deceive or to cheat another or by which

12 someone intends to deprive another of something of value.

13     In the context of the facts of this case, the phrase "a

14 scheme or artifice to deprive another of the intangible

15 right of honest services" means that you, as a vendor doing

16 business with Arch Coal, Inc., knew that Arch's employee,

17 identified in the information as Known Person Three, owed

18 his employer, Arch Coal, a duty of fiduciary -- or a

19 fiduciary duty of loyalty; that you intended that he breach

20 that duty by failing to disclose material matters; and that

21 you foresaw or reasonably should have foreseen that Arch

22 Coal might suffer an economic harm as a result of the

23 breach.

24     The phrase "false or fraudulent pretenses,

25 representations, omissions, or promises" means a statement,

an assertion, or omission which concerns a material or important fact or a material or important aspect of the matter in question.

A false representation or promise is one that was either known to be untrue at the time that it was made or used, or that it was made or used with reckless indifference as to whether it was, in fact, true or false, and made or used with the intent to defraud.

An "intent to defraud" means to act knowingly and with the intention or the purpose to deceive or to cheat.  An intent to defraud is accompanied, ordinarily, by a desire or a purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person.

The phrase "use of the mails" means that the mails were, in fact, used in some manner to further, or to advance, or to carry out the scheme to defraud or scheme to obtain money or property by false or fraudulent pretenses, representations, omissions, or promises or deprive Arch Coal of its intangible right to its employee's honest services.

An act is done knowingly if done voluntarily and intentionally and not because of mistake or accident or other innocent reason.

An act is done intentionally if it is done deliberately and not by accident.

1          Any objections to the elements as I've described them?

2          MS. THOMAS:  No, Your Honor.

3          MR. KUENZEL:  No, Your Honor.

4          THE COURT:  All right.  Next I want to go over

5     with you, Mr. Evans, the maximum and any minimum sentences

6     you may face as a result of your plea.  And that is a

7     maximum term of imprisonment of five years; a maximum fine

8     of $250,000, or twice the gross pecuniary gain or loss

9     resulting from your conduct, whichever is greater; and a

10    maximum term of supervised release of three years.  A

11    mandatory special assessment of $100 would be required.

12    Restitution could also be ordered if it was -- appeared to

13    be applicable, as it appears it may be in this case.

14         Next I want to return to our discussion of the Federal

15    Sentencing Guidelines.  They are advisory, meaning they're

16    not mandatory or don't have to be followed but they'll,

17    nevertheless, play an important role in your case from here

18    on out.

19         This Court will consider the factors set forth in 18,

20    U.S.C., Section 3553(a), including the advisory guidelines,

21    in determining the appropriate sentence in your case.

22         I now want to ask you some questions that will help me

23    understand your understanding of the advisory guidelines.

24    Have you discussed with your attorney the various factors

25    which apply in determining what the sentence in your case

1    may be under the advisory guidelines?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  And do you understand that on this

4    information you cannot, in any event, receive a greater

5    sentence than the statutory maximum that I explained to you

6    a moment ago?

7         THE DEFENDANT:  Yes, Your Honor.

8         THE COURT:  Do you understand that the Court will

9    not determine the sentence for your case until a later date

10   when a Pre-Sentence Report has been completed and both you

11   and the Government have had an opportunity to challenge the

12   facts and analysis reported by the probation officer?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  Do you also understand that under a

15   concept known as relevant conduct this Court, in determining

16   the Total Offense Level for sentencing purposes under the

17   guidelines, may take into account any conduct,

18   circumstances, or injuries relevant to the crime of which

19   you may be convicted?

20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Do you understand that after the Court

22   has determined what advisory guidelines apply to your case,

23   the Court has the authority to vary or depart from the

24   advisory guidelines and impose a sentence that is more

25   severe or less severe than the sentence called for by the

1   guidelines?

2           THE DEFENDANT:  Yes, Your Honor.

3           THE COURT:  Do you understand, then, in

4   determining your sentence, the Court is obligated to

5   calculate the applicable sentencing guideline range and to

6   consider that range, possible departures under the

7   guidelines, and other sentencing factors under 18, U.S.C.,

8   Section 3553(a)?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that parole has been

11  abolished and if you're sentenced to prison, you'll not be

12  released on parole?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Do you understand if the Court accepts

15  your plea of guilty and the sentence ultimately imposed upon

16  you is more severe than you had hoped for or expected, you

17  will still be bound by your guilty plea and would have no

18  right to withdraw it?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you understand if you plead guilty

21  to this single-count information which charges you with a

22  felony, you may lose important civil rights such as the

23  right to vote, the right to serve on a jury, the right to

24  hold public office, and the right to own or possess a

25  firearm?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  All right.  Mr. Evans, you have the

3   right to have the charge contained in the information

4   presented to a federal grand jury.  And I want to explain

5   that process to you.

6        A grand jury is composed of at least 16 and not more

7   than 23 persons, and at least 12 grand jurors must find that

8   there is probable cause to believe that you committed the

9   crime with which you are charged before you may be indicted.

10       Now, do you see any benefit to you of having this case

11  presented to a federal grand jury?

12       THE DEFENDANT:  No, Your Honor.

13       THE COURT:  Do you see any disadvantage or

14  prejudice to you of not having the case presented to a grand

15  jury?

16       THE DEFENDANT:  No, Your Honor.

17       THE COURT:  All right.  Your counsel has been

18  provided with a Waiver of Indictment form.  I want to go

19  over that with you now.

20       It contains what we call the style of the case, *United

21  States of America* vs. *James H. Evans, III*, the Criminal

22  Action Number, and it's entitled "Waiver of Indictment" and

23  it states as follows:

24       "I, James H. Evans, III, am accused of violating 18,

25  U.S.C., Section 371.  I have been advised of the nature of

1    the charges, of the proposed information, and of my rights.

2    I hereby waive in open court prosecution by indictment and

3    consent that the proceeding may be by information rather

4    than by indictment."

5         And there's a space for you to sign and date, a space

6    for counsel to sign, and a space for me to sign.

7         Now, do you understand what I just read to you?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Anything about the waiver of

10   indictment and procedure that you don't understand or you

11   have questions about?

12             THE DEFENDANT:  No, Your Honor.

13             THE COURT:  All right.  If you're prepared to do

14   so, then I'll ask that you sign and date the Waiver of

15   Indictment form.  I'll ask your counsel to sign it and

16   tender it to the Court.

17        (Pause)

18             MR. KUENZEL:  May I approach?

19             THE COURT:  You may.

20        All right.  I'll note for the record that the defendant

21   has signed and dated the Waiver of Indictment form.  It has

22   been endorsed by his counsel.  I am now signing it and I'll

23   order that it be made a part of the record for this

24   proceeding.

25        Next, Mr. Evans, I want to talk with you regarding your

1  trial and constitutional rights.

2      You have the right to plead not guilty and maintain a

3  not guilty plea throughout these proceedings, including at

4  trial.

5      You have the right to be represented by counsel.

6      You have the right to a speedy and public trial by a

7  jury composed of citizens of this district.

8      You have the right to confront and have an attorney

9  cross-examine witnesses and have your attorney move to

10  suppress any evidence he believes was illegally or

11  unconstitutionally obtained.

12      You have the right not to testify or otherwise

13  incriminate yourself and your exercise of this right cannot

14  be held against you.

15      Do you understand these rights so far?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  You have the right to have the

18  Government come in here and prove its case beyond a

19  reasonable doubt.  The jury's verdict would have to be

20  unanimous.

21      You have the right to present evidence on your own

22  behalf.  You have the right to testify on your own behalf at

23  trial.  And you have the right to subpoena witnesses to

24  testify for you.

25      Do you understand all these rights?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Any of them you don't understand or

3   you have questions about?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Other than your right to counsel, do

6   you understand that you'll be giving up all these rights by

7   entering a plea of guilty?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you understand that once you've

10  entered a plea of guilty, there's not going to be any trial

11  and no jury verdict and no finding of innocence or guilt

12  based on disputed evidence presented to me or to a jury?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Do you believe that you fully

15  understand the consequences of entering a plea of guilty?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Mr. Kuenzel, having reviewed this case

18  and the plea agreement in detail with your client, do you

19  believe that the defendant fully understands his rights and

20  fully understands the consequences of entering a plea of

21  guilty?

22         MR. KUENZEL:  Yes, Your Honor, I do.

23         THE COURT:  All right.  I note that there is a

24  Stipulation of Facts.  Does counsel have any objection to

25  the Court considering the Stipulation of Facts in its

1  consideration of the factual basis for the plea?

2         MS. THOMAS:  No objection.

3         MR. KUENZEL:  No, Your Honor.

4         THE COURT:  All right.  Very well.  I would say

5  that having looked at the law and the facts in this case

6  the -- you all might want to in your sentencing memoranda

7  address -- or maybe before then address the factual basis.

8  I'm certainly going to defer a factual basis finding.  This

9  seems somewhat complicated.  And I'm pretty sure I'm going

10  to want to hear from the parties on that.

11      Matter of fact, why don't we do this.  Why don't you

12  all file anything on that two weeks in advance of

13  sentencing.  That way, it would be separate from the

14  sentencing memos.

15      All right.  Mr. Evans, will you please stand.

16      As to the charge contained in the single-count

17  information, how do you plead, sir?  Guilty or not guilty?

18         THE DEFENDANT:  Guilty, Your Honor.

19         THE COURT:  You may be seated.

20      Your counsel has been provided with a written Plea of

21  Guilty form.  I would ask that you go over that with him if

22  necessary.  Sign and date it.  Then I'll ask him to sign it

23  and tender it to the Court.

24      (Pause)

25         MR. KUENZEL:  May I approach?

1          THE COURT:  You may.

2      All right.  I'll note for the record that the defendant

3  has signed and dated the written plea of guilty form.  It

4  has been witnessed by his counsel.  And I will order that it

5  be made a part of the record for this proceeding.

6      Mr. Evans, is this plea the result of any threat or

7  coercion or harassment of you by anyone?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Is it the result of any promise or

10  inducement other than those contained in the plea agreement?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Are you pleading guilty to protect

13  anyone?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Are you acting voluntarily and of your

16  own free will in entering this guilty plea?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Has anyone promised or predicted the

19  exact sentence which will be imposed in your case?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Do you understand no one could know at

22  this time the exact sentence which will be imposed?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Has your attorney adequately

25  represented you in this matter?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Has your attorney left anything undone

3    that you think should have been done?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Have you or your attorney found any

6    defense to the charge contained in the information?

7          THE DEFENDANT:  No, Your Honor.

8          THE COURT:  Are you, in fact, guilty of the crime

9    charged in the information?  In other words, did you do it?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  All right.  I'll find the defendant's

12    competent and capable of entering an informed plea; that the

13    plea is freely and voluntarily made; that the defendant

14    understands the nature of the charges and is aware of the

15    consequences of the plea.  I will find that the defendant

16    understands his rights and understands that he's giving up

17    these rights by entering a plea of guilty.

18      I will find that -- I will defer a factual basis

19    finding, but I will accept the plea of guilty to the

20    information and will defer adjudging the defendant guilty

21    until the time of sentencing.

22      I will ask the probation officer to prepare a

23    Pre-Sentence Investigation Report.

24      Mr. Evans, it's important that you cooperate fully with

25    the probation officer in the preparation of the Pre-Sentence

1    Report.  If you fail to cooperate fully and truthfully with

2    the probation officer, you could be subject to enhancement

3    of your sentence or the forfeiture of certain sentence

4    reductions for which you might otherwise be eligible.

5         It's also important that you not commit any additional

6    crimes between now and sentencing as there may be additional

7    punishments imposed for committing additional crimes.

8         I'm going to set this matter for sentencing on

9    November 17th, 2014, at 2:00 p.m.  And I'll put my other

10   pre-sentence dates in my post-plea order.

11        What's the Government's position with regard to bond?

12            MS. THOMAS:  No objection.

13            THE COURT:  All right.  I will allow the defendant

14   to be released today on a ten-thousand-dollar unsecured bond

15   under the standard conditions and those identified in the

16   Pre-Trial Services order.

17        I've already signed my part of that paperwork.

18        Mr. Kuenzel, you and your client just need to get with

19   the deputy clerk after the hearing to make sure your part of

20   the paperwork is completed.

21        Two notes I want to make about that.  One is that, Mr.

22   Evans, you're going to need to surrender your passport.  And

23   you're also going to need to get rid of your guns.  So, that

24   needs to be done immediately if it hasn't been done already.

25            THE DEFENDANT:  I've already taken care of that,

1    Your Honor.

2            THE COURT:  Very well.  Anything else we need to

3    take care of today?

4            MS. THOMAS:  No, Your Honor.

5            MR. KUENZEL:  No, Your Honor.

6            THE COURT:  All right.  Thank you.

7        (Proceedings concluded at 4:00 p.m.)

1        I, Lisa A. Cook, Official Reporter of the United

2  States District Court for the Southern District of West

3  Virginia, do hereby certify that the foregoing is a true and

4  correct transcript, to the best of my ability, from the

5  record of proceedings in the above-entitled matter.

6

7

8        s\Lisa A. Cook                    August 6, 2014

9           Reporter                          Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25