IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

**v.**          CRIMINAL NO. 2:14-00113

**JAMES H. EVANS III**

**MEMORANDUM IN SUPPORT OF THE FACTUAL BASIS
FOR DEFENDANT'S GUILTY PLEA**

Comes now the United States of America, by Meredith George Thomas, Assistant United States Attorney for the Southern District of West Virginia, and respectfully submits the following factual basis for Defendant's guilty plea. Defendant was charged with one count of conspiracy to commit honest services mail fraud.

**I.  The Law**

   **A.  Elements of Conspiracy**

Defendant Evans pled guilty to conspiracy to commit honest services mail fraud. For the purposes of that charge, a criminal conspiracy occurred when:

   a. at least two people entered into a knowing understanding to violate the law, that is, to commit honest services mail fraud, by a joint or common plan or course of action;

   b. That the defendant willfully became a member of such conspiracy;

c. That one of the conspirators during the
      existence of the conspiracy knowingly committed
      at least one of the means or methods (or "overt
      acts") described in the Information; and

   d. That such "overt act" was knowingly committed
      at or about the time alleged to further the
      conspiracy.

In a conspiracy to commit mail fraud, it is not necessary that the mails actually be used. Instead, the persons charged with the conspiracy must have reasonably contemplated the use of the mails so that the persons charged intended that the mails be used in furtherance of the scheme or that the nature of the scheme was such that the use of the mails was reasonably foreseeable. United States v. Edwards, 188 F.3d 230, 233-34 (4th Cir. 1999)(citing United States v. Feola, 420 U.S. 671, 694-95 (1975) (knowledge element in conspiracy charges generally)); United States v. Pereira, 347 U.S. 1, 8-9 (1954) (scienter element of mail fraud in particular).

   B.   **Substantive Crime of Honest Services Mail Fraud**

The substantive crime underlying the conspiracy charge is honest services mail fraud, which requires the following elements to be proven:

   a. The defendant knowingly devised or participated
      in a scheme to defraud a company of its right
      to the honest services of an employee through
      bribery or kickbacks;

   b. The defendant did so knowingly and with intent
      to defraud;

c. The scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense or concealment of fact; and

   d. The use of a mailing in furtherance of the scheme.

   **1.   Scheme to Defraud**

A scheme to defraud a company of its right to the honest services of an employee requires the breach of a fiduciary duty through participation in a bribery or kickback scheme. Furthermore, the breach must occur through the acceptance or demand of bribes or kickbacks. See United States v. Skilling, 561 U.S. 358, 408-09 (2010) (narrowing honest services fraud to cases of bribery and kickback schemes). The bribery or kickback must be in exchange for official action. Id. at 409.

The Supreme Court in Skilling noted that debates on whether a fiduciary duty exists in bribery and kickback schemes are rare. Skilling, 561 U.S. at 407 n. 41. The Fourth Circuit has not addressed what the breach of a fiduciary duty by an employee would entail for a violation of § 1346 in light of the narrowed application of the statute post-Skilling. Pre-Skilling, the Fourth Circuit explained that a breach of fiduciary duty by an employee occurs when the defendant "reasonably should have foreseen that the breach would create an identifiable economic risk to the [employer]." United States v. Vinyard, 266 F.3d 320, 327 (4th Cir. 2001) (adopting the

reasonably foreseeable test). In the case where the defendant is not the employee, the Vinyard Court determined that the element is met if the defendant "willingly aided and participated in the breach of a fiduciary duty" by the employee, and that the defendant "could reasonably foresee that the breach would create an identifiable economic risk" to the employee's company. See id. at 329-30. In light of Skilling, an employee's participation in a kickback scheme, where the employee received a benefit in exchange for performing an official action, would breach a fiduciary duty.

### 2. Intent to Defraud

Furthermore, the intent to defraud requires the defendant to act with the intent to deceive for the purpose of depriving the employer of its right to the fiduciary's honest services through bribes and kickbacks. See Skilling 561 U.S. at 401 (describing honest-services frauds as working a "deception" on the victim, Id. at 401-02). However, the deceit may consist of non-disclosure, as "[t]he actual deception that is practised is in the continued representation of the employee to the employer that he is honest and loyal to the employer's interests". Id. (quoting United States v. Procter & Gamble Co., 47 F. Supp. 676, 678 (D. Mass 1942)).

### 3. Material Misrepresentation or Omission

The deception must be material. See Neder v. United States, 527 U.S. 1 (1999). A concealed bribe or kickback would ordinarily be

4

sufficiently significant to an employer to satisfy the materiality element because it is ordinarily of importance that a fiduciary is secretly engaging in such conduct.

### 4. Mailing

Finally, like any mail fraud scheme, the scheme requires a mailing.

## II. FACTUAL BASIS

### A. Background

From 2009 through at least late 2010, Evans was a vendor at Mountain Laurel Mining Complex ("Mountain Laurel"), which was owned and operated by Arch Coal ("Arch"). ECF 11 at 15 (Stipulation of facts attached to plea agreement). During that same time period, Evans owned and operated Baisden Recycling, which bought and resold scrap materials. Id. Evans was a vendor at Mountain Laurel during that time period, as he was allowed to place "roll off bins" to collect scrap metal on the Mountain Laurel property in exchange for returning a portion of the proceeds to Arch. Id. Evans sold that scrap to a Nitro Scrap Dealer, which would then mail Arch a percentage of the sale and then mail the rest of the funds to Evans. Id. at 15-16.

Sometime in 2009, a significant amount of cable had accumulated on the Mountain Laurel property. This scrap cable was more valuable than other scrap metal because it was copper. Id. at 16.

5

**B.      Agreement**

Evans entered into a conspiracy to deprive Arch of the honest services of its general manager, identified in other court documents as David Runyon, by agreeing with Stephen Herndon that Evans would pay kickbacks to Runyon, and nothing to Arch, when Evans scrapped the copper cable at Mountain Laurel. See id. at 16. This agreement was in exchange for the official action of: (1) being selected to scrap the copper cable at Mountain Laurel; and (2) continuing to select Evans as a vendor at Mountain Laurel.[1] See id.  Herndon acted as the go-between for the transfer of funds to Runyon from Evans. Id.

**B. Object of the Conspiracy: The Fiduciary Duty of Runyon and Honest Services Mail Fraud**

Here, Runyon, as general manager of Arch Coal's Mountain Laurel Mining Complex, had a fiduciary duty to Arch Coal, as did Stephen Herndon, the warehouse manager at Mountain Laurel. See id. at 16 (noting Runyon's fiduciary duty).

As a conspiracy charge, the United States would only have to prove that honest services mail fraud was the object of the conspiracy, that Evans joined the conspiracy, and at least one of the overt acts alleged were committed in furtherance of the conspiracy.  Still, these actions agreed to and taken by Evans go

---

[1] The official action for the continued selection of Evans as a vendor at Mountain Laurel is alleged in the Information but not the stipulation of facts.

so far as to meet the requirements of substantive honest services mail fraud charge, as Evans participated in a scheme to deprive Arch of the honest services of its employee, Runyon. These actions caused a reasonably foreseeable risk of economic harm to Arch, Runyon's employer, as Arch got no benefit for the copper cable scrapped by Evans. See id. at 16. Evans willingly aided and participated in this breach of fiduciary duty.

Evans paid at least $30,000 cash to Herndon to provide to Runyon. Id. at 17. The cash kickbacks were undetectable to Arch, as they went directly to Herndon from Evans. See id. at 16. Through these actions, Herndon, Evans and Runyon conspired to keep these payments a secret from Arch so that Evans could secretly scrap the copper cable, provide funds to Runyon through Herndon, not pay Arch any percentage of the amounts received for the scrapped copper, and continue to be selected as a vendor to do legitimate work at Mountain Laurel.

**D.   Overt Acts**

As alleged in the Information, Mr. Evans committed and caused to be committed at least two overt acts in furtherance of the conspiracy. As explained in the stipulation, "[o]ver the course of several loads, Mr. Evans hauled the scrap cable to the Nitro Scrap Dealer, usually intermingled with other scrap materials. The Scrap Dealer paid Mr. Evans, who in turn gave Mr. Herndon a portion of the sale in cash as a kickback for Known Person Three." Id.

Specifically, around October 19, 2010, Evans sold a load of scrap metal from the Mountain Laurel Mining Complex, which included the scrap cable, to the Nitro Scrap Dealer. Id. Evans was to be paid approximately $79,501 for the entire load. Id. This load was different from the usual loads provided to the Nitro Scrap Dealer, since the Nitro Scrap Dealer did not mail Arch the usual percentage of the scrap metal value. Id. Instead, Evans caused the Nitro Scrap Dealer to mail the entire amount to Evans. Id.

### III.     CONCLUSION

For the foregoing reasons, the United States respectfully suggests that the factual basis required for the defendant's guilty plea has been met.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

By: s/Meredith George Thomas
MEREDITH GEORGE THOMAS
Assistant United States Attorney
WV State Bar No. 10596
300 Virginia Street, East
Room 4000
Charleston, West Virginia 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: meredith.thomas@usdoj.gov

**CERTIFICATE OF SERVICE**

It is hereby certified that the foregoing "MEMORANDUM IN SUPPORT OF THE FACTUAL BASIS FOR DEFENDANT'S GUILTY PLEA" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 15th day of January, 2015 to:

    Robert B. Kuenzel II
    Kuenzel & Associates PLLC
    36 Adams Street
    Chapmanville, West Virginia 25508

    s/Meredith George Thomas
    MEREDITH GEORGE THOMAS
    Assistant United States Attorney
    WV State Bar No. 10596
    300 Virginia Street, East
    Room 4000
    Charleston, West Virginia 25301
    Telephone: 304-345-2200
    Fax: 304-347-5104
    E-mail: meredith.thomas@usdoj.gov