## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**and**                               **CASE NO.:**   **2: 14–CR–00113**

**JAMES H. EVANS, III,**

    **Defendant.**

### DEFENDANT'S MEMORANDUM SUPPORTING FACTUAL BASIS

COMES NOW, the Defendant, James H. Evans, III, by counsel, Robert B Kuenzel, and, in accordance with the Court's Plea Order[1], submits the following basis for the Defendant's guilty plea.

At the Defendant's plea hearing, the Court inquired as to the factual basis of Defendant's plea. Following the recitation by the government and the Defendant, the Court directed the parties to submit this memorandum addressing the factual basis of Defendant's plea to the charged offense, noting applicable legal authority.

### I. FACTUAL BASIS

On August 5, 2014, the Defendant, James H. Evans, III, entered a guilty plea to violation of 18 U.S.C. §371, Conspiracy to Obtain Money and Property by False Pretenses through Mail Fraud. These charges stem from the salvage services that the Defendant provided to Arch Coal

---

[1]The Court's Plea Order was entered on August 5, 2014, with a sentencing hearing scheduled for November 17, 2014. This memorandum was to be submitted by November 3, 2014, two (2) weeks prior to sentencing. However, the Defendant's sentencing was continued until January 29, 2014; thus, counsel is submitting this Memorandum two (2) weeks prior to the revised sentencing date.

Inc.'s Mountain Laurel Mining Complex located in/near Sharples, Logan County, West Virginia, which is located within the Southern District of West Virginia.     The Defendant owns and operates Baisden Recycling located in/near Verdunville, Logan County, West Virginia.   The Defendant's brother-in-law, Stephen Herndon, a co-defendant in these cases, worked as the warehouse manager at Arch's Mountain Laurel Mine.  Another co-defendant, David Runyon, worked for Arch as Mountain Laurel's general mine manager.   It is Defendant's understanding that Defendant Herndon and Defendant Runyon were both employees of Arch.  Further, as employees of Arch, Defendant Herndon and Defendant Runyon had a duty to provide honest services to their employer.

During the time period at issue in the alleged conspiracy, Stephen Herndon approached the Defendant, James H. Evans, III, and inquired about Evans providing salvage/recycling services to Arch's Mountain Laurel Complex – Evans agreed.   Initially, Evans was to provide the mine with roll-off bins and to generally clean an area of mining property.  As the roll-off bins would be filled with old mining cable and/or other metal by-products, Defendant Evans would cause them to be hauled to a salvage yard.   The salvage yard would then issue payment to Evans; in turn, Evans would issue payment for a portion of the salvaged proceeds to Arch.

Shortly after the arrangement with Defendant Evans began, Evans was approached again by Stephen Herndon who advised that Arch could no longer do business with him because of the familial relationship.   However, it was discussed and agreed to that the salvage yard could issue payment directly to Evans for his portion and also forward payment directly to Arch.   Again, Defendant Evans was approached by Stephen Herndon who advised Evans that David Runyon had indicated that a portion of the proceeds from the salvaged material needed to be paid directly to Herndon and Runyon in the form of case, subverting proceeds that should be payable to Arch.

Instead of losing the business, Defendant Evans agreed.[2]   In turn, Arch's proportionate share of scrap sales decreased; the amount paid to Evans increased, but Evans, in turn, had to pay proceeds unto Herndon and Runyon.  Defendant Evans and the United States agree that this sum was $30,000 (*See*, Stipulation of Facts which more clearly sets forth the interaction between the parties).

## II.  CRIMINAL VIOLATIONS

### A.  Conspiracy

Defendant Evans' guilty plea was for a violation of 18 U.S.C. §371, Conspiracy to Obtain Money and Property by False Pretenses through Mail Fraud, in the instant case - honest services mail fraud.   Though Defendant Evans was NOT an employee of Arch, Stephen Herndon and David Runyon were employees of Arch.   Defendant Evans guilty plea is to conspiracy.   A conspiracy occurs when: (1) at least two persons enter into an agreement to violate the law, in this case, Herndon and Runyon depriving their employer (Arch) from honest services; (2) a defendant willfully agrees to enter into such a conspiracy or agreement; (3) at least one of the co-conspirators, while the conspiracy is in action, knowingly commits an overt act; and (4) the knowing commission of the overt act was in furtherance of the conspiracy.

### B.  Honest Services

The substantive crime underlying the criminal conspiracy is the deprivation of an employer of honest services mail fraud.  In the case at hand, Defendant Evans was not an employee of Arch, however Stephen Herndon and David Runyon were.

For one to be guilty of honest services mail fraud, the government must prove: (1) the

_____

[2]It is counsel's understanding, from researching the various other co-defendants in the various Mountain Laurel cases, this was the common scheme between the management at Mountain Laurel and its contractors/vendors.

defendant knowingly devised or participated in a scheme to defraud an employer of the right to the honest services of an employee through bribery or kickbacks; (2) the knowingly committed the act with the intent to defraud; (3) the scheme or artifice to defraud the employer involved a material misrepresentation, false statement, false pretense or concealment of fact; and (4) the mail was used in furtherance of the scheme.

## C.  Underlying Criminal Act – Honest Services

### I.  Fiduciary Duty

In order to deprive an employer of its right to the honest services of an employee requires the breach of a fiduciary duty by an employee through participation in a bribery or kickback scheme.  Additionally, the breach of duty must occur through the acceptance or demand of bribes or kickbacks. *See* United States v. Skilling, 561 U.S. 358, 408-09 (2010).   Further, the bribery or kickback must be in exchange for official action. Id. at 409.   In Skilling, the Supreme Court noted that in bribery and/or kickback schemes, the question of a whether a fiduciary duty exists is rare. Skilling, 561 U.S. at 407 n. 41.

In United States v. Vinyard, 266 F.3d 320 (4th Cir. 2001), the Fourth Circuit noted that a violation of 18 U.S.C. §1346 occurs when an employee "reasonably should have foreseen that the breach [of fiduciary duty] would create an identifiable economic risk to the [employer]." Vinyard at 327.   Further, in cases involving non-employees, the Vinyard Court noted that the "reasonably foreseeable" economic risk element is met if a defendant "willingly aided and participated in the breach of a fiduciary duty" by an employee.  Vinyard at 329-30.   In accord with Skilling, a kickback scheme occurs if an employee received a benefit in exchange for an official employment action, thus a breach of fiduciary duty.

### ii. Intent to Defraud

Next, intent to defraud occurs if the defendant's actions were carried out intending to deceive and deprive the employer of the employee's honest services through bribes and kickbacks. *See* <u>Skilling</u> 561 U.S. at 401

### iii. Material Misrepresentations or Omissions

The deception, as stated above, must be material. *See* <u>Neder v. United States</u>, 527 U.S. 1 (1999). As in the case at hand, a kickback and/or bribe seemingly would meet the materiality element as an employee owes a fiduciary duty to his/her employer; thus, by depriving an employer of profits that it ordinarily is entitled to would satisfy this element.

### iv. Mailing

Lastly, mailing is a requirement of the mail fraud scheme.

## III. ANALYSIS

As set forth in the factual basis above, and more particularly described in the Stipulation of Facts attached to Defendant Evans's plea agreement, an agreement was entered into wherein Defendant Evans would secure scrap metal and scrap wiring from Arch's Mountain Laurel Complex and sell it to a salvage yard.

Specifically, Stephen Herndon and David Runyon were employees of Arch; Herndon as warehouse manager and Runyon as general manager. Stephen Herndon and David Runyon articulated a plan wherein Defendant Evans would be able to secure Arch's scrap metal and scrap wiring in order to sell it to a salvage yard. In exchange for Evans obtaining the scrap metal business at Arch's Mountain Laurel Complex, a portion of the proceeds from the sell of the scrap metal would have to be returned to Herndon and Runyon. The proceeds that were paid to Herndon and Runyon were proceeds that ordinarily should be paid to their employer, Arch.

Unfortunately, Defendant Evans entered into this agreement with Stephen Herndon and David Runyon in order to continue to maintain business with Arch.

Thus, in the case at hand, both Stephen Herndon and David Runyon are employees of Arch, both owing a fiduciary duty to their employer. Further, from the Defendant's factual basis, Herndon and Runyon intended to deceive and/or deprive Arch of honest services as it related to Arch's scrap metal and scrap wiring. Arch purchased the metal and wiring for use in its mine, it still owned the metal and wiring even in scrap form; further, Arch still could have derived a profit from the sale of the scrap metal and scrap wiring, as it regularly did from the sale of scrap metal and scrap wiring. Lastly, checks were mailed to Defendant Evans and to Arch from the salvage yard.

Therefore, if the United States would be able to prove the above elements as it relates to Herndon and Runyon, then the violation of 18 U.S.C. §1346 would be met. Then, as it relates to the conspiracy by Defendant Evans, the government must prove that (1) two persons or more entered into the above agreement; (2) Evans willfully participated in the agreement; (3) Herndon and Runyon committed an overt act in accepting money from Evans that rightfully should have gone to Arch; and (4) these acts were in furtherance of the conspiracy.

Defendant Evans and the United States agree that Evans paid unto Herndon and Runyon at least $30,000 for his ability to secure continued business with Arch's Mountain Laurel Complex. The agreement by Defendant Evans to pay proceeds to Herndon and Runyon in exchange for continued business appears to be the common thread among the various defendants in the Mountain Laurel Complex investigation.

### III.  CONCLUSION

Defendant Evans believes that the legal analysis set forth above, along with the factual basis set forth herein and more particularly described in the Stipulation of Facts, provides a factual and legal basis exists for entry of his guilty plea in this matter.

Respectfully submitted,

/s/ *Robert B. Kuenzel*
_____
Robert B. Kuenzel, State Bar No. 8972
Kuenzel & Associates, PLLC
36 Adams Street
P.O. Box 607
Chapmanville, WV 25508-0607
304.310.4263
304.310.4264 (facsimile)

# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**and**                                          **CASE NO.:  2: 14–CR–00113**

**JAMES H. EVANS, III,**

    **Defendant.**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that he has served a true copy of the attached

Memorandum Supporting Factual Basis upon the person(s) listed below on the 15th  day of

January , __2015__ , by depositing a true copy of same in the United States Mail, postage prepaid,

or via facsimile, or via hand delivery, or via electronic transmission, addressed follows:

**Meredith Thomas**
**Assistant United States Attorney**
**P.O. Box 1713**
**Charleston, WV 25326-1713**
**304.347.5104 – Facsimile**

/s/ *Robert B. Kuenzel*
_____
Robert B. Kuenzel, State Bar No. 8972
Kuenzel & Associates, PLLC
36 Adams Street
P.O. Box 607
Chapmanville, WV 25508-0607
304.310.4263
304.310.4264 (facsimile)