IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                CRIMINAL ACTION NO. 2:14-cr-00113

JAMES H. EVANS III,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the determination of whether there is a factual basis for Defendant's plea. For the reasons discussed herein, the Court finds there is no factual basis for the plea. As such, the Court **REJECTS** Defendant's plea.

*I. Background*

This case arises out of a fraudulent scheme orchestrated around the Mountain Laurel Mining Complex ("Mountain Laurel"). Mountain Laurel is owned by Mingo Logan Coal Company ("Mingo Logan"), which, in turn, is a wholly owned subsidiary of Arch Coal, Inc. ("Arch Coal"). (PSR ¶ 9; ECF 21 at 1.)

Defendant owns Baisden Recycling, Inc.—a company that buys and sells scrap materials. (ECF 11, Ex. B at 1.) "Since at least 2009, [Arch Coal] allowed [Defendant] to place 'roll-off bins'" on the Mountain Laurel property. (*Id.*) Employees at Mountain Laurel "place[d] scrap metal in the roll-off bins as the material became obsolete." (*Id.*) "Once a roll-off bin became full, [Defendant] would have it transported to [a scrap dealer] to be sold." (*Id.*) The scrap dealer "then

1

mailed [Arch Coal] a check for a percentage of the sale and mailed the remaining funds to [Defendant]." (*Id.* at 2.)

Sometime in 2009, an employee at Mountain Laurel approached Defendant on behalf of David Runyon—the general manager of Mountain Laurel and an employee of Mingo Logan—regarding a scheme to defraud Arch Coal. (*See id.*; ECF 16 at 6. *See generally* ECF 21 at 4 ("[T]echnically at times, pursuant to the corporate structure of [Arch Coal] and its subsidiaries, Mr. Runyon was an employee of [Mingo Logan]. . . .").) The employee asked Defendant "if he was interested in scrapping a significant amount of cable that had accumulated on the Mountain Laurel property." (ECF 11, Ex. B at 2.) "The scrap cable was more valuable than other scrap metal because it was made of #2 copper." (*Id.*) In order to obtain the work pertaining to this cable, Defendant "had to agree to pay [Runyon] a kickback and nothing to [Arch Coal], although as a matter of course [Defendant] paid [Arch Coal] in the dealings related to the roll-off bins." (*Id.*) "Over the course of several loads, [Defendant] hauled the scrap cable to the [scrap dealer], usually intermingled with other scrap materials." (*Id.*) The scrap dealer "paid [Defendant], who in turn gave [the employee] a portion of the sale in cash as a kickback for [Runyon]." (*Id.*) "[Defendant] believed he picked up material 10-15 times, for which he paid [the employee] a minimum of $700 and as much as $20,000 in cash at one time." (PSR ¶ 33.) "In total, [Defendant] paid approximately $30,000 in kickbacks." (*Id.* ¶ 20; *see* ECF 11, Ex. B at 3. *But see* PSR ¶ 40 (describing the statement of a third party who indicated that Defendant "paid $70,000.00" total in kickbacks during the course of the scheme).)

On May 27, 2014, Defendant entered into a plea agreement with the Government. (ECF 11.) In the plea agreement, Defendant agreed to plead guilty to a single-count Information, which

charges him with conspiracy in violation of 18 U.S.C. § 371. (*Id.* ¶ 2.) According to the Information, the nature of the conspiracy was the following:

> [T]o devise and intend to devise a scheme and artifice to defraud [Arch Coal] of the intangible right of honest services of [Runyon] and to obtain money and property by false pretenses through mail fraud, in violation[] of 18 [U.S.C.] §§ 1341 and 1346, that is, by depriving [Arch Coal] of the intangible right of honest services of [Runyon] and to obtain money and property by false pretenses through the payment of illegal cash kickbacks and concealment of material information.

(*Id.*, Ex. A ¶ 6.) Defendant entered a written plea of guilty to the single-count Information at an August 5, 2014 hearing. (ECF 7; *see also* ECF 10 (Defendant's written plea of guilty).) During this hearing, the Court deferred finding a sufficient factual basis for Defendant's plea. (ECF 7.)

On January 29, 2015, the Court held a sentencing hearing in this case. (ECF 19.) The Court continued the sentencing hearing to provide an opportunity for the parties to file briefing on whether Runyon owed the necessary fiduciary duty to Arch Coal to sustain the underlying offense of the honest services mail fraud. (*See id.*; *see also* ECF 20 (providing the Court's January 30, 2015 order directing "the parties to submit additional briefing regarding the issues addressed at the [January 29, 2015] hearing no later than February 16, 2015").) The Government filed its Memorandum Regarding Fiduciary Duty on February 16, 2015. (ECF 21.) Defendant has not filed any additional briefing regarding the fiduciary duty issue, to date. As such, Defendant's plea is ready for a factual-basis determination by the Court.

## II. Legal Standard

Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v.*

*DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)).

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id.* Rather, the court "may conclude that a factual basis exists from anything that appears on the record." *Id.* (quoting *DeFusco*, 949 F.2d at 120).

"[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v. New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (citing *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III. Discussion

Defendant pled guilty to a single-count Information alleging conspiracy to commit mail fraud in violation of 18 U.S.C. § 371. (ECF 11.) Section 371 provides the following, in relevant part:

> If two or more persons conspire to commit any offense against the United States . . . and one or more of such persons do any act to effect the object of the

4

conspiracy, each shall . . .

be guilty of an offense against the United States. To convict Defendant of conspiracy, the Government must show the following essential elements beyond a reasonable doubt: (1) there was an agreement between one or more persons to commit the underlying offense; (2) at some point during the existence or life of the conspiracy, the defendant knew the purpose of the conspiracy and, with that knowledge, then deliberately joined the conspiracy; and (3) at some point during the existence or life of the conspiracy, one of its alleged members knowingly performed one of the overt acts charged in the Information in order to advance the purpose of the conspiracy. *See, e.g.*, *United States v. Chorman*, 910 F.2d 102, 109 (4th Cir. 1990); *United States v. O'Connor*, 158 F. Supp. 2d 697, 723 (E.D. Va. 2001).

The Information provides that the underlying offense is honest services mail fraud under 18 U.S.C. §§ 1341 and 1346. (ECF 1 ¶ 6 (alleging that Defendant conspired to "depriv[e] Arch [Coal] of the intangible right of honest services of [Runyon]"). The elements of mail fraud "are (1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." *United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir. 2001); *see* 18 U.S.C. § 1341 (mail fraud statute). "[T]he term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

"Although the honest services theory of mail fraud is directed primarily at the deterrence and punishment of corruption among public officials, the courts have consistently recognized the statute's province to encompass dishonest acts perpetrated in private commercial settings." *Vinyard*, 266 F.3d at 326 (citing *United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000)). "This recognition of liability within the private sector comprehends that a corporate officer or other

private employee may bear a duty of loyalty to his employer."[1] *Id.*

In *Skilling v. United States*, the Supreme Court limited the scope of the "honest services" type of "scheme or artifice" to only include "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." 561 U.S. 358, 404 (2010). The *Skilling* holding did not expressly address whether honest services fraud includes a fiduciary duty requirement. *See id.* Instead, the Supreme Court held "that § 1346 criminalizes *only* the bribe-and-kickback core of the pre-*McNally* case law." *Id.* at 408–09. Nonetheless, prior to this holding, the Court described the "solid core" of the honest services doctrine as "involv[ing] offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." *Id.* at 407 (emphasis added). Courts that addressed the *Skilling* opinion interpreted it as stating that honest services fraud includes a fiduciary duty requirement. *See, e.g.*, *United States v. Nayak*, 769 F.3d 978, 980 (7th Cir. 2014) (noting that the *Skilling* decision "also held that 'the violation of a fiduciary duty' was a prerequisite to an honest-services fraud conviction" (citing *Skilling*, 561 U.S. at 407–08)); *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012) ("A close examination of the Supreme Court's opinion in *Skilling* reveals that embedded in the Court's holding . . . is the implication that a breach of fiduciary duty is an element of honest services fraud." (citing *Skilling*, 561 U.S. at 408–09)); *United States v. Scanlon*, 753 F. Supp. 2d 23, 25 (D.C.C. 2010) ("*Skilling* made clear . . . that bribery and kickback schemes under § 1346 must involve a breach of fiduciary duty, as this duty establishes the right to one's honest

---

[1] The traditional formulation of honest services fraud in a private-sector context is a charge of fraud against an employee of a private-sector entity. *See Vinyard*, 266 F.3d at 327–30. Courts also recognize a variant of honest services fraud involving a charge of fraud against a non-employee involving the employee of a private-sector entity. *See id.* The rationale behind this variant of honest services fraud is the non-employee deprives the private-sector entity of the honest services of its employee. *See, e.g.*, 18 U.S.C. § 1346 (honest services fraud statute).

services out of which the victim of § 1346 is defrauded."); *see also United States v. Nouri*, 711 F.3d 129, 137 n.1 (2d Cir. 2013) ("The 'existence of a fiduciary relationship' between an employee and employer is 'beyond dispute,' and the violation of that duty through the employee's participation in a bribery or kickback scheme is within the core of actions criminalized by § 1346." (citing *Skilling*, 561 U.S. at 406–07 & n.1)).

The Court agrees with these interpretations of the *Skilling* opinion and finds that the Supreme Court's decision in *Skilling* imposes a requirement in private-sector honest services fraud cases that an employee must have a fiduciary duty to a private-sector entity that was deprived of that employee's honest services. *Cf. Vinyard*, 266 F.3d at 329 (pre-*Skilling* decision stating that, in the context of a charge against a non-employee of a private entity, the Government must prove the non-employee "willingly aided and participated in the breach of a fiduciary duty [by an employee of the entity] . . . , and that he could reasonably foresee that the breach would create an identifiable economic risk" to the private-sector entity). Accordingly, to convict Defendant of conspiracy to commit honest services mail fraud, the Government must show that the employee—Runyon—had a fiduciary duty to the private-sector entity—Arch Coal.[2] (*Cf.* ECF 1 ¶ 6 (providing the Information, which alleges, in part, that Defendant "did knowingly conspire . . . to devise and intend to devise a scheme and artifice to defraud [Arch Coal] of the intangible right of honest services of [Runyon] and to obtain money and property by false pretenses through mail fraud, in violation[] of 18 [U.S.C.] §§ 1341 and 1346, that is, by depriving [Arch Coal] of the intangible right of honest services of [Runyon]").)

In order to determine whether Runyon held such a duty, the Court must address the source

---

[2] The Government concedes that breach of fiduciary duty is a requirement of honest services mail fraud. (ECF 21 at 2 ("A scheme to defraud a company of its right to the honest services of an employee requires the breach of a fiduciary duty through participation in a bribery or kickback scheme.").)

and scope of fiduciary duties that satisfy the fiduciary duty requirement of honest services fraud—an issue that has challenged numerous courts. *Cf. Skilling*, 561 U.S. at 421 (Scalia, J., concurring in part) (describing "the character of the 'fiduciary capacity' to which the bribery and kickback restriction applies" as "the most fundamental indeterminacy" of honest services mail fraud). The Supreme Court, anticipating this issue, provided the following discussion in a footnote of the *Skilling* decision:

> Justice SCALIA emphasizes divisions in the Courts of Appeals regarding the source and scope of fiduciary duties. But these debates were rare in bribe and kickback cases. The existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute; examples include public official-public, *see, e.g.*, *United States v. Mandel*, 591 F.2d 1347 (C.A.4 1979); employee-employer, *see, e.g.*, *United States v. Bohonus*, 628 F.2d 1167 (C.A.9 1980); and union official-union members, *see, e.g.*, *United States v. Price*, 788 F.2d 234 (C.A.4 1986). *See generally Chiarella v. United States*, 445 U.S. 222, 233, 100 S. Ct. 1108, 63 L.Ed.2d 348 (1980) (noting the "established doctrine that [a fiduciary] duty arises from a specific relationship between two parties").

561 U.S. at 407 n.41. As such, a "specific relationship," such as "employee-employer," satisfies the fiduciary duty requirement. *See id.* (citations omitted).

Courts also recognize a comparable group of fiduciary relationships that satisfy the fiduciary requirement of honest services fraud. In *United States v. Scanlon*, the D.C. Circuit explicitly rejected the defendant's argument that footnote 41 of the *Skilling* opinion provides the *only* three types of relationships that satisfy Section 1346's fiduciary duty requirement. 753 F. Supp. 2d 23, 26 (D.C.C. 2010) ("[A]t no point did *Skilling* hold that these three fiduciary relationships marked the outer boundaries of § 1346."). The *Scanlon* court provided the relationships of "attorney-client, doctor-patient, or stockbroker-customer" as additional examples of relationships that satisfy the fiduciary duty requirement. *Id.* at 25; *see also United States v. Lupton*, 620 F.3d 790, 804–05 (7th Cir. 2010) (post-*Skilling* decision affirming the Section 1346

8

conviction of a real-estate broker who defrauded a client). *See generally United States v. Rybicki*, 354 F.3d 124, 142 n.17 (2d Cir. 2003) (noting, in a pre-*Skilling* decision, that "[a]lthough the bulk of the pre-*McNally* honest-services cases involved employees, we see no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity"). These related groups of fiduciary relationships share a similar characteristic as the three categories provided by the Court in *Skilling*—a direct (i.e. "specific") fiduciary relationship between the fiduciary and the harmed entity or person.[3] *Cf. Chiarella*, 445 U.S. at 233 (stating that "the established doctrine [is] that [a fiduciary] duty arises from a specific relationship between two parties").

Turning to the instant case, the Court finds that Runyon did not hold the requisite fiduciary duty to Arch Coal to sustain the underlying charge of honest services fraud against Defendant. Runyon was not an employee of Arch Coal. Rather, he was an employee of Mingo Logan—a subsidiary of Arch Coal. (*E.g.*, ECF 21 at 4.) As such, the employee-employer relationship—and the corresponding fiduciary relationship—was between Runyon and Mingo Logan, not Runyon and Arch Coal.[4] *See, e.g.*, *Skilling*, 561 U.S. at 407 n.41 ("The existence of a fiduciary

---

[3] Following *Skilling*, at least one court found that a different, broader category of fiduciary-like relationships satisfy the fiduciary duty requirement of Section 1346. In particular, in *United States v. Milovanovic*, the Ninth Circuit held that, to prove an honest services mail fraud offense, the Government must show either a strict fiduciary relationship or "a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." 678 F.3d 713, 724 (9th Cir. 2012). The Court is not persuaded by the Ninth Circuit's analysis in *Milovanovic*, as it substantially deviates from the "specific relationship" nexus provided by the Supreme Court in *Skilling* and the above-referenced related cases.

[4] The Government states that, in a separate but related proceeding, Runyon "acknowledged that he and others employed at [Mountain Laurel] were employees of Arch Coal and that [Mountain Laurel] was an Arch Coal mine." (ECF 21 at 4 (citing *United States v. Runyon*, 2:14-cr-117, ECF 9 at 20–21).) Despite Runyon's belief, however, the record shows that he was not an employee of Arch Coal, but, rather, an employee of Mingo Logan. *Id.* ("[T]echnically at times, pursuant to the corporate structure of [Arch Coal] and its subsidiaries, Mr. Runyon was an employee of [Mingo Logan] . . . ."). As such, Runyon's employment-related fiduciary duty was to Mingo Logan.

The Government also notes that "Arch Coal was the ultimate beneficiary of any fiduciary duties owed by Mr. Runyon, and in turn was the ultimate victim of any breach of such duty." (*Id.* at 4–5.) Even if true, this circumstance

relationship, under any definition of that term, was usually beyond dispute; examples include . . . employee-employer . . . ." (citing *Bohonus*, 628 F.2d 1167)). Additionally, there is no evidence in the record that Runyon held any separate, direct relationship with Arch Coal that would give rise to the requisite fiduciary duty apart from the employment context. *See, e.g.*, *Chiarella*, 445 U.S. at 233 (noting the "established doctrine that [a fiduciary] duty arises from a specific relationship between two parties").

The Government nonetheless offers two pertinent arguments that Runyon had the requisite fiduciary relationship with Arch Coal. First, the Government argues that Runyon's position as the general manager of Mountain Laurel indicates that he had a fiduciary duty to the corporate parent of his employer. (ECF 21 at 4.) In support of this assertion, the Government cites case law indicating that a director of a wholly-owned subsidiary owes fiduciary duties to its corporate parent. (*Id.* (citing *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988)).)

The Court is not persuaded by this argument. Runyon was the general manager of Mountain Laurel—*not* a director or officer of Mingo Logan. (*See, e.g.*, ECF 11, Ex. B at 1.) As such, case law regarding the potential fiduciary duties of directors or officers of wholly owned subsidiaries to corporate parents is inapplicable here. *See, e.g. Anadarko Petroleum Corp.*, 545 A.2d at 1174.

Second, the Government offers two examples to support its assertion that Runyon had a direct relationship with Arch Coal. (*See* ECF 21 at 4–6.) In particular, the Government notes that Runyon's 2007 performance review "was on an Arch Coal, Inc. form and referenced how

---

does not alter the fact that Runyon owed his employment-related fiduciary duty to Mingo Logan—not Arch Coal. *Cf. United States v. Vinyard*, 266 F.3d 320, 329 (4th Cir. 2001) (stating that "breach of a fiduciary duty" and "reasonably foresee[able]" economic harm are separate elements of an honest services fraud offense).

Mountain Laurel's performance contributed to Arch Coal's bottom line." (*Id.* at 5 (emphasis added).) However, as this statement indicates, Runyon's performance was important to Arch Coal due to his employment at a subsidiary of Arch Coal—Mingo Logan. (*See id.* (stating that the 2007 performance review "referenced how *Mountain Laurel's performance* contributed to Arch Coal's bottom line") (emphasis added); *see also id.*, Ex. A ("Under [Runyon's] leadership, [Mountain Laurel] is developing into a solid business unit that will contribute much to the future of Arch Coal.").) This performance review does not negate the fact that Runyon owed his employment-related fiduciary obligations to Mingo Logan, and not Arch Coal. *See, e.g.*, *Skilling*, 561 U.S. at 407 n.41 (citation omitted).

The Government also cites two versions of the Arch Coal Code of Conduct, which Arch Coal distributed to its employees and the employees of its subsidiaries in 2009 and 2010. (ECF 21 at 5–6; *see also id.*, Ex. B (Arch Coal's 2010 Code of Business Conduct); *id.*, Ex. C (Arch Coal's 2009 Code of Business Conduct).) The Government argues, in essence, that Arch Coal's distribution of its Code of Conduct created a fiduciary duty between the company and all recipients. (*See* ECF 21 at 5–6.)

However, the Arch Coal Code of Conduct is not a direct or unique agreement between Runyon and Arch Coal. Rather, it is general publication provided to Arch Coal employees, as well as the employees of its subsidiaries. (*See, e.g.*, *id.*, Ex. B (stating that the Arch Coal Code of Business Conduct "is not a contract or guarantee of employment and does not create any contractual rights") (emphasis omitted); Ex. C (same).) The Government's proffered approach would constitute an extraordinary expansion to the sources of fiduciary duties, whereby an employee of a subsidiary in a massive corporate umbrella would gain fiduciary duties to the

11

corporate parents of their employer merely by the distribution of generic corporate forms and rules. The Court declines to endorse such a sweeping expansion to the sources of employment-related fiduciary duties in the context of honest services fraud. *Cf. Rybicki*, 354 F.3d at 142 n.17 (finding that honest services fraud applies outside of the employment context "to persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity").

The Court finds that Runyon owed his employment-related fiduciary duty to Mingo Logan, not Arch Coal. Additionally, the Court finds that Runyon did not owe a fiduciary duty to Arch Coal through any relationship outside of the employment context. Accordingly, Runyon did not have the requisite fiduciary duty to Arch Coal to support the underlying offense of honest services mail fraud. *See, e.g.*, *Skilling*, 561 U.S. at 407 n.41 (discussing the types of fiduciary relationships that satisfy the fiduciary duty requirement of honest services fraud).

The record indicates that Defendant may have conspired with others to commit an offense. However, absent the requisite fiduciary duty between Runyon and Arch Coal, the object of that conspiracy was *not* the fraud of depriving Arch Coal of its intangible rights to Runyon's honest services. Accordingly, the Government has not met its burden to demonstrate that there is a factual basis for Defendant's plea of guilty to the offense of conspiracy to commit honest services mail fraud. *See, e.g.*, *United States v. Chorman*, 910 F.2d 102, 109 (4th Cir. 1990) (stating that, "to prove the existence of a conspiracy in violation of § 371," one requirement is that "the government must prove an agreement between two or more persons to act together in committing an offense").

### *IV.  Conclusion*

For the reasons discussed above, the Court **FINDS** that there is not a factual basis for Defendant's plea. Accordingly, the Court **REJECTS** Defendant's plea. The Court therefore **CANCELS** the sentencing hearing scheduled for April 27, 2015, at 10:30 a.m.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        April 21, 2015

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE